UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JARMEL JOWERS,

                                               Plaintiff,

       -against-

CITY OF NEW YORK,
CHARLES MINCH, JOHN PORTALATIN,
and NICHOLAS MARCIANO,

                                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

14 CV 0001 (FB) (JMA)

**FIRST AMENDED COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

       Plaintiff Jarmel Jowers, by his attorneys, Lumer & Neville, as and for his First Amended Complaint, hereby alleges as follows, upon information and belief:

**PARTIES, VENUE and JURISDICTION**

       1.    At all times hereinafter mentioned, plaintiff was an adult male and a resident of Kings County, State of New York.

       2.    At all relevant times hereinafter mentioned, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

       3.    At all relevant times hereinafter mentioned, defendant Charles Minch, Tax Identification No. 921598, was employed by the City of New York as a member of the NYPD.  Portalatin is sued herein in his official and individual capacities.

4.      At all relevant times hereinafter mentioned, defendant John Portalatin, Tax Identification No. 928984, was employed by the City of New York as a member of the NYPD.  Portalatin is sued herein in his official and individual capacities.

5.      At all relevant times hereinafter mentioned, defendant Nicholas Marciano, Tax Identification No. 935246, was employed by the City of New York as a member of the NYPD.  Marciano is sued herein in his official and individual capacities.

6.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

7.      Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the defendant City of New York resides, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

8.      On September 1, 2012, at or about 2:30 a.m., plaintiff was lawfully present inside an apartment located on Pacific Street between Ralph and Howard Avenues in Brooklyn, New York (the "premises") as an invited guest at a party being held in the apartment.

9.      At or about this time, various members of the NYPD arrived and spoke with the tenant at the premises.

10.     Shortly thereafter, the officers, including the individual defendants, entered the apartment where the party was taking place and demanded that everyone present

at the premises leave.

11. Plaintiff was outside of the building when he was approached by one of the officers, who may have been one of the individual defendants, who demanded that plaintiff allow the officer to search him.

12. The plaintiff complied and permitted the search, even though there was no lawful basis for the search.

13. The search yielded no evidence of guns, drugs, or other contraband, in plaintiff's possession.

14. Plaintiff was not engaged in any unlawful or suspicious activity prior to or at the time of defendants' entry.

15. Despite the lack of any evidence that plaintiff was committing or had committed a crime, the individual defendants seized and handcuffed plaintiff at that time.

16. Defendant Marciano was the arresting officer.

17. Defendants Minch and Portalatin are believed to the be the supervising officers on the scene who directed or otherwise approved the arrest.

18. Plaintiff was transported to a local area NYPD station house, where he was imprisoned in a holding cell.

19. While at the station house, plaintiff was searched again, finger printed and processed under arrest number K12684780. He was held in there for a period of many hours before being transported to Central Booking.

20. Plaintiff was then kept locked up in a cell at Central Booking for a

period of hours.

21. Eventually the Kings County District Attorney's Office declined to prosecute plaintiff and he was summarily released from Central Booking.

22. It was objectively unreasonable for the defendants to arrest plaintiff, as there was no evidence that he had engaged in any unlawful conduct, nor could the defendants have reasonably believed that such cause existed.

23. At no time did any of the individual defendants take any steps to intervene in, prevent, or otherwise limit the heretofore misconduct engaged in against the plaintiff.

24. The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

25. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

26. Plaintiff repeats the allegations contained in paragraphs "1" through "25 above as though stated fully herein.

27. Defendants willfully and intentionally seized, searched, detained, and

arrested plaintiff, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

28. Defendants willfully and intentionally fabricated evidence and denied plaintiff a fair trial by (i) falsely claiming that plaintiff was engaged in criminal conduct or had committed a crime at the time of his arrest; (ii) forwarding this information to the Kings County Prosecutor in order to bring about and cause the criminal prosecution of the plaintiff; and by deliberately failing to intervene in their fellow officers' fabrication of this evidence.

29. By so doing, the individual defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, unlawful searches of person and property, and the deprivation of his right to a fair trial through the use of fabricated evidence, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

30. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

31. Plaintiff repeats each and every allegation of paragraphs "1" through "30" of the complaint as if incorporated and reiterated herein

32. The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned or otherwise tacitly sanctioned by the municipal defendant designed to increase the number of arrests being made, without regard to whether probable cause existed for these arrests.

33. More precisely, under this policy or plan, officers are encouraged or pressured to make as many arrests as possible, which has caused and will continue to cause, its officers, including the individual defendants and their colleagues, to make arrests regardless of whether there was any factual basis for the charges. The officer(s) would then fabricate claims of having seen the person(s) being arrested in possession of weapons or illegal narcotics or otherwise engaged in criminal activity.

34. The purpose of this policy or plan was to generate large numbers of arrests within the individual commands therein, in order to create a false or misleading impression of positive activity by their officers and satisfying internal quotas.

35. In addition, members of the NYPD are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, summonses issued, and other, similar criteria. Members of the NYPD routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

36. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest, despite the municipal defendant's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively

pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecutors often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

37. Rather than take steps to abolish this plainly unconstitutional and unlawful police, the municipal defendant continued to tacitly endorse this policy of deliberate misconduct.

38. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

39. In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates

>for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

40. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

41. Moreover, tape recordings made of senior commanders within the 81 precinct as referenced in the litigation *Schoolcraft v. City of New York*, 10 CV 6005 (RWS) and newspaper accounts of the recordings, demonstrate the existence of arrest and summons quotas generally within the NYPD and that NYPD officers are expected to meet these quotas regardless of the legitimacy of the arrests and summonses.

42. It is also manifestly clear through the litigation brought in the Eastern and Southern Districts of New York that countless hundreds, if not thousands, of civilians have alleged that members of the NYPD have deliberately arrested them without probable cause.  Thus, even if the municipal defendant was not the architect of the policy causing these unlawful arrests, they were certainly on notice of the practice.

43. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York, at the bare minimum, has been on notice was deliberately indifferent to the risk that the undue emphasis inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

44. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

    i. on the first cause of action, actual and punitive damages in an amount to be determined at trial;

    ii. on the second cause of action, actual damages in an amount to be determined at trial; and

    iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

    iv. such other relief as the Court deems just and proper.

Dated: August 25, 2014
       New York, New York

LUMER & NEVILLE
Attorneys for Plaintiff
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

_____
Michael B. Lumer (ML-1947)